UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                    :
R&Q REINSURANCE COMPANY,                                            :
                                                                    :
                                      Plaintiff,                    :          13 Civ. 8013 (PAE)
                         -v-                                        :
                                                                    :          OPINION & ORDER
UTICA MUTUAL INSURANCE COMPANY,                                     :
                                                                    :
                                      Defendant.                    :
                                                                    :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On November 12, 2013, plaintiff R&Q Reinsurance Company ("R&Q") moved for

summary judgment against defendant Utica Mutual Insurance Company ("Utica"), seeking

confirmation of an arbitration panel's Final Order (the "Award") issued on October 19, 2013.

Dkt. 1–2.  Utica opposes confirmation on the grounds that the Award is not a final judgment, but

instead represents, effectively, an interim award in an arbitration that never reached completion.

For the following reasons, R&Q's motion for summary judgment is granted.

I.      **Background**[1]

In this lawsuit, R&Q seeks to confirm an arbitration Award, pursuant to the Federal

Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA").  That Award was the outcome of an arbitration

---

[1] The Court's account of the underlying facts of this case is drawn from:  (1) R&Q's Petition to
Confirm Arbitration Award ("Pet.") and attached exhibits (Dkt. 1); (2) the Affidavit of John F.
Finnegan ("Finnegan Aff.") and attached exhibits (Dkt. 24); and (3) the Affidavit of Syed
Ahmad ("Ahmad Aff.") and attached exhibits (Dkt. 27).  The Court also cites herein the
transcript of the oral argument, held on January 29, 2014 ("Tr.").  On January 16, 2014, the
Court issued two orders sealing, respectively, redacted portions of the Finnegan Aff. and Ahmad
Aff., pursuant to the parties' Confidentiality Agreement, *see* Dkt. 21–22, which is described in
further detail herein.

charged with resolving the extent to which R&Q was liable for amounts billed to it by Utica. Pet. ¶ 5; *id.* Ex. 1.  These billings arose out of nine reinsurance certificates, all of which R&Q had issued to Utica between 1978 and 1982.[2]  Pet. ¶ 5.  These nine certificates covered "umbrella policies" that Utica had written to cover losses suffered by Goulds Pumps Inc. ("Goulds"), arising, at least in large part, out of long-term injuries suffered by employees' exposure to asbestos.  *See generally* Finnegan Aff.  Accordingly, the relevant business relationships were as follows:  Utica was Goulds' primary insurer, and R&Q was Utica's reinsurer.

Over the past few decades, Goulds has suffered substantial asbestos-related losses.  *Id.* As a consequence, Utica has had to pay out hundreds of millions of dollars under its umbrella policies with Goulds.  *Id.*  Utica has attempted to recoup some of those losses from its reinsurers, including R&Q.  Under the reinsurance certificates referenced above, Utica has billed R&Q for losses that, as of May 31, 2013, total approximately $21.7 million.  *See id.* Ex. 9.  R&Q, however, has refused to pay.  In November 2008, R&Q agreed to arbitrate its dispute over Utica's billings.  Pet. ¶¶ 6–7.

In May 2009, R&Q and Utica signed an Arbitration Protocol.  *Id.* Ex. 1.  The Protocol provided that:

> The decision of the majority of the arbitration panel shall be final and binding. The arbitration panel shall render its interim rulings, if any, and final award in writing, but a "reasoned award" shall not be required.  Judgment upon any interim ruling or the final award may be entered in any court of competent jurisdiction to the extent permitted by law.

*Id.* Ex. 1 ¶ B.5.  In October 2009, the parties also executed a Confidentiality Agreement, which provided that:

---

[2] The reinsurance certificates were actually issued by R&Q's predecessor-in-interest, INA Reinsurance Company, but for ease of reference, the Court refers to the certificates as having been issued by R&Q.

> [A]ll briefs, depositions and hearing transcripts generated in the courts of [the] arbitration, documents created for the arbitration or produced in the proceedings by the opposing party or third-parties, final award and any interim decisions, correspondence, oral discussions and information exchanged in connection with the proceeding (hereinafter collectively referred to as "Arbitration Information") will be kept confidential.  This Confidentiality Agreement will remain in effect even after conclusion of the arbitration proceedings.

Pet. Ex. 2 at 1; *see also* Pet. ¶ 8.

In July 2013, after the parties conducted discovery and resolved all preliminary matters, a seven-day evidentiary hearing was held.  Pet. ¶ 9.  Both sides in the arbitration agreed that Utica's billings to R&Q could be sorted into four categories:  (1) indemnity payments; (2) defense costs; (3) orphan shares; and (4) declaratory judgment expenses.  *See* Finnegan Aff. Exs. 5–7.  The three-arbitrator panel was therefore tasked with resolving, at a category level, which, if any, of these four categories were ones as to which Utica could recover from R&Q.  After the evidence was presented, the panel directed the parties to submit post-hearing briefs in lieu of closing arguments.  *Id*.

On October 18, 2013, the arbitration panel deliberated in person.  *Id*.  On October 19, 2013, the panel issued its "Final Order," which read:

(1) We find that the 1978–1981 policies issued by Utica to Goulds had "aggregate limits" of $500,000 each.

(2) We find that the facultative certificates reinsuring the 1978–1982 inclusive umbrella policies issued by Utica to Goulds *do not cover defense costs, orphan shares, or declaratory judgment expenses.*

(3) No attorneys' fees, costs, or interest shall be awarded.

(4) The prior payment by R&Q of $1.6 million dollars to Utica is valid, not subject to reimbursement, and shall be credited towards R&Q's limits stated in the respective certificates.

(5) The Panel shall remain constituted for a period of 90 days from the date of this order during which all panel bills and other costs shall be submitted and

paid by the parties and the Panel will be automatically *Functus Officio* thereafter.

(6) All future billings by Utica shall be in accordance with this order and the certificates.

(7) All pending motions and other requests for relief are denied.

Pet. Ex. 4 ("Award") (emphasis added).  The panel thus held, as among the four categories, that R&Q could be billed for indemnity costs, but not for defense costs, orphan share, or declaratory judgment expenses.  *Id.*  The panel did not, however, resolve the exact amount owed by R&Q to Utica in that one category, indemnity costs.  *Id.*; *see also* Arbitration Protocol ¶ B.5 (noting that "a 'reasoned award' shall not be required").  The panel also rejected Utica's demand for attorneys' fees, costs, or interest.

Following the Award, Utica twice asked the panel for reconsideration and/or clarification.  First, on November 5, 2013, Utica asked the Panel to reconsider "the part of its award denying Utica recovery of" defense costs.  Finnegan Aff. Ex. 11.  On November 18, 2013, R&Q opposed Utica's motion to reconsider, *id.* Ex. 12, and on November 22, 2013, Utica submitted a reply letter, *id.* Ex. 13.  On December 3, 2013, the panel denied Utica's request "to reconsider and reverse a portion of the Panel's October 19, 2013 Final Order."  *Id.* Ex. 14.  Second, on December 9, 2013, Utica asked the Panel to clarify its ruling with respect to future billings.  *Id.* Ex. 15.  Utica argued that the panel's ruling that future billings must accord with both the certificates and the panel's order was ambiguous.  *Id.*  On December 10, 2013, R&Q submitted a letter, arguing that there was no ambiguity in the panel's final order—instead, it was clear that future billings would not include defense costs.  *Id.* Ex. 16.  On December 16, 2013, the panel sent a one-sentence e-mail, which read:  "For the sake of clarification, the panel rules that all other requests for further relief were and are denied."  *Id.* Ex. 17.   Relevant here, in

neither of these requests for reconsideration or clarification did Utica ask the Panel to modify its Award to set out a specific dollar amount owed to it.  Nor did it indicate that its view was that such a task lay ahead before the panel's work was complete.

## II.      Procedural History

On November 12, 2013, R&Q filed a petition to confirm the panel's Award under the FAA, Dkt. 1, and an accompanying memorandum of law, Dkt. 2 ("Pl. Br.").  On December 13, 2013, Utica opposed R&Q's petition.  Dkt. 15 ("Def. Br.").  On December 23, 2013, R&Q filed a reply brief.  Dkt. 16 ("Pl. Rep. Br.").  On January 23, 2014, Utica filed a surreply brief.  Dkt. 28 ("Def. Rep. Br.").  On January 29, 2014, the Court heard argument.

## III.     Discussion

### A.       Applicable Legal Standards

The FAA provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  *Hall St. Assocs. L.L.C. v. Mattell, Inc.*, 552 U.S. 576, 582 (2008).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  But "[a]rbitration awards are not self-enforcing."  *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 63 (2d Cir. 2003), *overruled on other grounds by Hall St.*, 552 U.S. 576.  Rather, "they must be given force and effect by being converted to judicial orders by courts."  *D.H. Blair*, 462 F.3d at 104.

Review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration—namely to settle disputes efficiently and avoid long and expensive litigation."  *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499,

at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn Houdstermaatschappij, BV v. Standards Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)); *see also NYKcool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867 (LAK) (AJP), 2010 WL 4812975, at *5 (S.D.N.Y. Nov. 24, 2010) ("To ensure that the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation are met, arbitration awards are subject to very limited review."). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (citation omitted).

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).

### B.      Application

There is no material issue of fact that would preclude the confirmation of the Award in this case.  In opposing the Award's confirmation, Utica makes one argument—that the panel's Award is not final because it failed to specify the exact amount R&Q owed to Utica.  *See* Def. Br. at 2 ("Here, the [Award] does not determine all claims submitted to the Panel since the Panel has not determined the particular amount that the parties dispute."); Def. Rep. Br. at 2 (the Award "is not final because the Panel did not finalize the parties' obligations with respect to the main issue submitted in the arbitration—the parties' disputes over the outstanding billings"). The Court rejects this argument.

For better or worse, the parties to this arbitration tasked the arbitral panel with resolving their dispute at a conceptual, rather than a mathematical, level.  That is clear from the proposed orders both parties submitted to the panel with their post-hearing briefs.  Utica's proposed order asked the panel to order R&Q to pay all outstanding billings under the certificates, which totaled, as of May 31, 2013, $21,703,305.77.  Finnegan Ex. 6.  Utica also asked for interest at 9% a year and reasonable attorneys' fees and costs.  For its part, R&Q's proposed order gave the panel two choices:  (1) no recovery by Utica and recovery by R&Q of the $1,691,903.15 it previously paid to Utica; or (2) recovery by Utica of indemnity payments under just the 1982 certificate, with no recovery by Utica of defense costs, orphan shares, or declaratory judgment expenses.  *Id.* Ex. 8. Neither side, however, supplied the panel with concrete data or concrete evidence to enable the panel to tabulate, as to any particular category, what the amount R&Q owed Utica with respect to that category.  The panel, therefore, unsurprisingly, rendered a decision pitched at a categorical level.  It held that Utica could recover indemnity costs under the 1978, 1979, 1980, 1981, and

1982 certificates, but not defense costs, orphan shares, or declaratory judgment expenses.  *See* Award.

At argument, counsel for R&Q helpfully explained why, given the asbestos-related nature of the reinsurance billing dispute, it was unsurprising that both sides litigated, and the panel resolved, the dispute at a categorical level, rather than fixing a specific-sum monetary award. Counsel explained that reinsurance arbitrations in this area often arise in the middle of long-term reinsurance arrangements, where billings attributable to long-tail claims may be destined to be made for years or decades to come.  As a result, where an insurer and reinsurer disagree about which costs are covered by the reinsurer, they will often litigate, in mid-stream, the reinsurer's obligations at a concept level.  *See* Tr. 18 ("It's very commonplace in reinsurance arbitration just to dispute concepts and then later on to [allow] the parties to work out how the chips will fall."). The parties then, in the course of their ongoing dealings, apply the arbitral panel's conceptual rulings to particular billing periods, retrospectively and prospectively.  *See id.* at 10 (once "a conceptual framework" is in place, the accounting people on both sides can "sit down and hash it out and come up with a number").

Consistent with this paradigm, the parties pursued the arbitration here in a manner that made it impossible for the panel to calculate the exact amount R&Q owed to Utica.  Utica did not present the panel with the evidence necessary for it to make such a calculation, and the parties did not stipulate as to these facts.

The specific open calculative issue, as the parties explained at argument, is as follows.  In light of the arbitral panel's ruling that only indemnity costs are cognizable, the ceiling on Utica's recovery from R&Q, through May 31, 2013, is the amount of Utica's billings attributable to

indemnity costs —$13,948,583.57.[3]  Finnegan Aff. Ex. 9; *see* Tr. 9, 30.  The parties, however, dispute how much this amount is to be reduced to reflect amounts, within that sum, attributable to the "orphan share,"[4] which, the panel held, are non-compensable.  Utica estimates that the orphan share offset from this figure, as of May 31, 2013, was $1,448,593.26.  Finnegan Aff. Ex. 7, Appendix A; *see* Tr. 30.  Based on that estimate, Utica states, R&Q would owe it approximately $12.5 million.  R&Q does not dispute that these figures may be correct. However, R&Q states, it cannot know this for certain, because the critical records are within Utica's possession, and Utica did not present them to it or the arbitral panel during the arbitration, nor has Utica otherwise yet shared them with R&Q.  R&Q therefore has to be able to satisfy itself that, in fact, Utica has accurately calculated the orphan share offset to its indemnity costs.  At argument, Utica, for its part, acknowledged this:

> Q:  Did Utica present to the panel, and did it present in discovery to R&Q the data that would have permitted the panel to decide what part of the $13,948,282.21 that is listed as loss in Appendix A was comprised of orphan shares?  Was that data before the panel?

---

[3] Given the long-term nature of asbestos claims, however, counsel advised the Court at argument that future claims by Utica against R&Q are anticipated, for periods after May 2013 and indeed likely well into the future.  The Award anticipates this.  It provides, prospectively, that "[a]ll future billings by Utica shall be in accordance with this order and the certificates."  Award ¶ 6. R&Q's counsel did not dispute this, and agreed that, once the parties develop a mechanism for implementing the panel's decision that indemnity costs are recoverable, billing "should run smoothly thereafter."  Tr. at 17.

[4] While an exact definition for "orphan share" is not necessary to this ruling, the Court's understanding is that "orphan share" consists of amounts that Utica would have billed to Goulds or Goulds' other insurers, but that Utica now seeks to recover from its reinsurers, because Goulds or Goulds' other insurers are no longer able to pay (usually due to insolvency).  *See* Finnegan Aff. Ex. 7.  In other words, these are the "orphaned" billing amounts that Utica seeks to reallocate to its reinsurers, including R&Q.  Because the arbitration panel here decided that R&Q was not liable for these amounts, Utica must now subtract any orphan share amounts within the indemnity billings previously sent to R&Q.

A:  No.

Tr. at 24.

In light of this history, the Court agrees with R&Q that the panel's decision was clearly a final judgment.  The parties did not ask the panel to calculate a precise damages figure; and Utica did not present the nuts-and-bolts records to the panel that would have permitted it to resolve, at a dollars-and-cents level, the monies it was owed by R&Q.  The panel therefore understandably left to the parties the task of applying its categorical rulings, both retrospectively as to records of billings through May 31, 2013, and prospectively.  The panel resolved the disputes the parties had queued up for it.  There was nothing else for the panel to resolve on the evidence before it. Utica's rueful wish now that the arbitration had been litigated with an eye towards yielding an Award framed in concrete dollar terms, rather than as a conceptual ruling, does not make the panel's Award any less final.[5]

Although not necessary to this ruling, the Court notes that Utica's conduct following the arbitral Award reinforced its finality.  The Award stated that the panel would only "remain constituted for a period of 90 days" from the date of the Award.  *See* Pet. Ex. 4.  The Award was issued on October 19, 2013; this 90-day period therefore expired on approximately January 17,

---

[5] At argument, the Court was given confidence that the parties can efficiently resolve their dispute as to the amount R&Q owes Utica through May 31 2013.  R&Q's counsel stated that the difference between Utica's calculation of deductible orphan shares and the position that R&Q is likely to take, upon reviewing Utica's records, is likely no more than $200,000.  *See* Tr. at 37. R&Q's counsel, in consultation with a representative of R&Q present in Court, acknowledged that, by any measure, R&Q would ultimately owe Utica between $10 million and $12 million for retrospective time periods.  *Id.* at 40.  At the hearing, R&Q committed, in the interests of helping the parties move towards a prompt resolution of the billing disputes, to paying Utica "the amount that is undisputed"—*i.e.*, $10 to $12 million—promptly upon confirmation of the Award, thereby not leaving Utica wholly unpaid while the parties resolve their dispute as to the calculation of the orphan-share offset.  *Id.* at 46–47.  The Court commends R&Q for taking this productive step.

2014. During this period, Utica did not ask the panel to remain constituted pending proceedings in this Court, nor did it ask this Court to stay the dissolution of the panel. Further, Utica did not suggest to this Court the prospect of a remand to the panel until its surreply brief was filed on January 23, 2014, six days after the panel had stated it would cease to exist. *See* Def. Rep. Br. at 10 n.4.

Even resolving all ambiguities and drawing all permissible factual inferences in favor of Utica, Utica's claim that the panel's Award was other than final is unsustainable. Nor is there any other basis for not confirming the Award: Utica does not argue, for example, that the Award was "procured by corruption, fraud, or undue means," or that the arbitrators were partial or corrupt. *See* 9 U.S.C. § 10.

The Court has reviewed in detail the parties' arbitration protocol and the resulting Award. On that record, and based on the limited review appropriate on a motion to confirm an arbitration Award, the Court concludes that R&Q has shown that there is no material issue of fact for trial. There is much more than the required "barely colorable justification for the outcome reached." *Landy Michaels Realty Corp.*, 954 F.2d at 797. Accordingly, the Court confirms the Award.

## CONCLUSION

For the foregoing reasons, R&Q's motion for summary judgment is granted. The Award issued by the arbitration panel on October 19, 2013 is hereby confirmed. Utica and R&Q are to each comply with the terms of the Award in every respect. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 10, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 14, 2014
New York, New York

11